UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GREGORY BROOKS,                                           Case No.: 17-3626

                         Plaintiff,

        v.                                                   **COMPLAINT**

THE DOE FUND, INC.,
TERRY COOPER individually and in his official capacity,
JAMES WASHINGTON individually and in his official capacity,
and
ANTHONY WIGGINS individually and in his official capacity,


                       Defendants.

-------------------------------------------------------------X

       Plaintiff, GREGORY BROOKS, through his counsel, Derek Smith Law Group, PLLC,

brings this action against Defendants THE DOE FUND, INC., TERRY COOPER, JAMES

WASHINGTON and ANTHONY WIGGINS, upon information and belief, as follows:


### NATURE OF CASE


1.   Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

§§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991), Pub. L. No.

102-166 ("Title VII"), 42 U.S.C. §1981, New York State Executive Law, and the New York City

Human Rights Law, New York City Administrative Code § 8-502(a), et. seq. ("NYCHRL"), and

seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to a sex/gender

discrimination, race discrimination, discrimination based on his status of being previously

convicted, sexual harassment, hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

3. This action involves a federal question under Title VII of the Civil Rights Act.

4. The Court also has supplemental jurisdiction over the State and City Causes of Action.

5. Venue is proper in this District based upon Defendants residency and place of business within New York County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

6. The EEOC mailed a Right to Sue Letter to Plaintiff on March 24, 2017.

7. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

8. At all times material, Plaintiff GREGORY BROOKS (hereinafter also referred to as "BROOKS," or "Plaintiff") is an individual heterosexual man who is a resident of the State of New York and resides the County of Kings.

9. At all times material, Defendant THE DOE FUND, INC., (hereinafter also referred to as "DOE FUND," "Defendant," or "Defendants") is a domestic not-for-profit corporation created and authorized under the laws of the State of New York.

10. At all times material, Defendant TERRY COOPER (hereinafter also referred to as "COOPER," "Defendant," or "Defendants") is an individual homosexual man who is believed to be a resident of the State of New York and to reside in the City of New York. At the time of Plaintiff's employment, Defendant COOPER served as the Supervisor/ Dispatch Administrator for Defendant DOE FUND.

2

11.  At all times material, Defendant JAMES WASHINGTON, (hereinafter also referred to as "JAMES WASHINGTON," "Defendant," or "Defendants") is an individual man who is believed to be a resident of the State of New York and to reside in the City of New York.  At the time of Plaintiff's employment, Defendant JAMES WASHINGTON served as the head supervisor of Defendant DOE FUND.

12.  At all times material, Defendant ANTHONY WIGGINS (hereinafter also referred to as "WIGGINS," "Defendant," or "Defendants"), is an individual man who is believed to be a resident of the State of New York and to reside in the City of New York.  At the time of Plaintiff's employment, Defendant WIGGINS served as a Director of Defendant DOE FUND.

13.  The above defendants are collectively referred to as "Defendants."

## STATEMENT OF FACTS

14.  At all times material, Plaintiff is a husband and the father of three.

15.  At all relevant times herein, Plaintiff was obligated to complete parole and had the option of joining additional programs to help return to the workforce.

16.  In addition to his parole, on or around June 27, 2016, Plaintiff was admitted into Defendant DOE FUND's Ready Willing and Able program as a resident at 520 Gates Ave, Brooklyn New York 11216.

17.  The Ready Willing and Able program helps transition men back to mainstream society after incarceration by providing the opportunity to go to work and earn money. In addition to providing employment, Ready Willing and Able provides vocational/educational services, and housing vouchers.

18.  It was essential that Plaintiff complete to a 20-30 day "in house" work detail where he would be paid minimum wage and live in the Gates Ave facility in order to get back on his feet and create an employment history.

19.  While in the program, Plaintiff was required to follow all of Defendant DOE FUND's rules and procedure, failure to do so would impact Plaintiff's parole.

20.  Plaintiff's parole Case Manager, Mr. Dashell Porter (hereinafter also referred to as "Mr. Porter"), assured Plaintiff that DOE FUND would accommodate his schedule regarding his parole and a mandatory treatment program (Parole stipulation).

21.  On or around July 1, 2016, Plaintiff started his "in house" labor providing Defendant DOE FUND with custodial services within the Gates Ave facility.

22.  That at all times relevant hereto, Defendant COOPER, as the Supervisor/ Dispatch Administrator for Defendant DOE FUND, had supervisory authority over Plaintiff with regard to his new employment.

23.  In comparison to Plaintiff, Defendant COOPER was a large, much taller, and much stronger man.

24.  While working for Defendant DOE FUND, Plaintiff befriended Mr. Paul Washington who worked nearby with the Police Athletic League (PAL), an independent, non-profit youth development agency in New York City.

25.  Mr. Paul Washington soon became a trusted friend while Plaintiff participated in Defendant DOE FUND's programs.

26.  On or around July 6, 2016, Plaintiff told Defendant COOPER, "Hey Terry, I want to pull you up later to find out about that Hudson Route."

27.  Plaintiff said above referring to a specific employment option at off field.

4

28. In front of other employees, Defendant COOPER responded, "**OOOH YEAH, I LIKE TO BE PULLED UP, CHAINED UP AND WHIPPED!**"

29. Plaintiff was disturbed by his supervisor's indecent sexual comment.

30. Defendant COOPER and the rest of the staff laughed.

31. On or around July 8, 2016, again Plaintiff contacted COOPER to obtain information on the Hudson Route.

32. Defendant COOPER responded, "I got you."

33. On or around July 15, 2016, Defendant COOPER issued Plaintiff a starting date and a field schedule.

34. Defendant COOPER's schedule conflicted with Claimant's parole schedule and picking up his children after school.

35. Plaintiff immediately contacted his Case Manager, Mr. Porter, to inform him about the discrepancy.

36. Mr. Porter contacted Defendant COOPER regarding the scheduling issue. Porter informed Plaintiff he would have to comply with the schedule for one week and then would be issued a new schedule the following week that would allow him to visit his children and meet his parole obligations.

37. Plaintiff was also informed that the Hudson route's only shift was from 3pm to 11:30 p.m.

38. On or around July 17, 2016, Plaintiff reported to the company van.

39. Defendant COOPER took attendance of all the workers present. Immediately after, Defendant COOPER began to make sexual jokes.

40. By way of example, one of the workers told Defendant COOPER "Get your ass outta here Terry, you're holding us up!" Defendant COOPER replied, "**EVERYTHING YOU SAY HAS**

**TO DO WITH MY ASS, I KNOW YOU WANT SOME; YOU JUST CAN'T STOP THINKING ABOUT MY ASS."**

41.  Defendant COOPER's inappropriate sexual comments made Plaintiff uncomfortable.

42.  On or around July 21, 2016, Defendant COOPER approached Plaintiff and asked Plaintiff if he liked the Hudson route. Plaintiff informed Defendant COOPER that he enjoyed it but that the hours created a conflict.

43.  Plaintiff excused himself and began a conversation with the other workers.

44.  Once more, Defendant COOPER approached Plaintiff and said "When you're done come see me in my office."

45.  That same day, Plaintiff met with Defendant COOPER in his office. Defendant COOPER informed Plaintiff that he would change his schedule. Defendant COOPER informed Plaintiff that he would only be able to grant Plaintiff one weekend day off.

46.  As Defendant COOPER spoke he began to flail his hands and touched Plaintiff's penis.

47.  Plaintiff was horrified and shocked by the act. As a heterosexual man, he assumed Defendant COOPER touching his penis had to be unintentional, therefore Plaintiff moved back slightly to prevent it from reoccurring.

48.  Nevertheless, Defendant COOPER moved closer to Claimant, continued to speak, and brushed up against Claimant's penis again for a second time.

49.  At this point, Plaintiff realized Defendant COOPER's acts were in fact intentional and that Defendant COOPER wanted to have sex with him.

50.  Defendant COOPER's act constituted *quid pro quo* sexual harassment. Defendant COOPER would only modify Plaintiff's schedule only if Defendant COOPER's sexual abuses advances and offensive touching.

51. Defendant COOPER's unwanted sexual advances made Plaintiff extremely uneasy and uncomfortable.

52. Next, Defendant COOPER touched Plaintiff's penis for a third time. Defendant COOPER firmly grabbed the front of Plaintiff's sweatpants near his groin, and flirtatiously said "**I'M SORRY, I TALK WITH MY HANDS.**"

53. As Defendant COOPER gripped Plaintiff's penis he said "**WHAT IS THIS?**"

54. Defendant COOPER's egregious and forceful behavior left Plaintiff mortified and in complete shock. Although Plaintiff was greatly offended and fuming with anger, he was momentarily paralyzed with panic of caused by Defendant COOPER's actions.

55. Plaintiff was bewildered by the unprofessional and inappropriate nature of his supervisor's behavior.

56. Plaintiff wanted to speak out against Defendant COOPER grabbing his penis but feared that if he said the wrong thing that Defendant COOPER, being his supervisor, would retaliate by kicking Plaintiff out of the program and he risked losing his freedom and ability to see his wife and children. Plaintiff feared this because he knew Defendant COOPER had the leverage and power as a DOE FUND supervisor over Plaintiff.

57. All Plaintiff could muster was the courage to excuse himself and tell Defendant COOPER that he was going to his room.

58. As Plaintiff exited Defendant COOPER's office, Defendant COOPER called out to Plaintiff and said "**I'LL BE UP IN TWO MINUTES.**"

59. Plaintiff fled upstairs to his bedroom, shut the door, and locked the door to keep Defendant COOPER out.

60. Suspecting Defendant COOPER was not finished sexually harassing and assaulting him, Plaintiff set his phone to record any audio of their conversation.

61. Less than two minutes of Plaintiff entering his bedroom, Defendant COOPER knocked on the door. As Plaintiff opened the door to his room, Defendant COOPER invited himself inside and shut the door.

62. Defendant COOPER asked "Why was the door locked?" Claimant informed Defendant COOPER, "I always keep it locked."

63. Plaintiff stood beside his bed and near his phone. In an effort to keep the encounter professional and focused on work, Plaintiff asked Defendant COOPER in reference to COOPER fixing the schedule conflict, "So, Terry what do you have for me?"

64. Defendant COOPER immediately walked towards Plaintiff and picked up Plaintiff's phone from the bed and asked, "You on the phone?" Claimant nervously responded "yes" and he took his phone out of Defendant COOPER's hand.

65. Then Defendant COOPER reached out and took out Plaintiff's penis from his sweatpants. As Defendant COOPER grabbed Plaintiff's penis for a fourth time, Defendant COOPER fondled and stroked it in his hand for at least one minute as he discussed Plaintiff's schedule.

66. Again, Plaintiff was shocked and humiliated.

67. Plaintiff abruptly pulled away and Defendant COOPER released Plaintiff's penis.

68. Plaintiff was cornered in his bedroom and grew afraid that Defendant COOPER, being a much bigger man would over power him if he said the wrong thing.

69. Searching for an excuse to end the series of traumatic events, Plaintiff informed Defendant COOPER that he was going to take a shower and pointed to his clean clothes and Defendant COOPER exited Plaintiff's bedroom.

70. Plaintiff suspected Defendant COOPER was aware that he was recording their conversation.

71. Thinking that the horrible events finally ended and he was safe, Plaintiff began to undress in the bathroom, however, a few minutes later, Defendant COOPER entered the bathroom connected to his bedroom as Plaintiff was shirtless.

72. Defendant COOPER stared at Plaintiff in a menacing and sexual manner as he was in the bathroom and eventually left.

73. Plaintiff returned to Defendant COOPER's office after his shower hoping to finally get his schedule sorted out so that he could have time to be a father to his children.

74. Finally, Defendant COOPER informed Plaintiff that he granted him the weekend off and that he moved him from the night shift to the morning shift.

75. All along Defendant COOPER had the power to adjust Plaintiff's schedule, however he wanted sex from Plaintiff in exchange for making the adjustment.

76. In sexually harassing Plaintiff, Defendant COOPER singled out Plaintiff as a heterosexual man, he could intentionally shame. Defendant COOPER also preyed on Plaintiff as a parolee, of whom he could take advantage given Plaintiff's dependency on his continued enrollment in DOE FUND's program in order to remain free and to see his wife and children.

77. Plaintiff thanked him and told COOPER that he appreciated the weekend off.

78. Defendant COOPER responded, "**WHERE'S MY APPRECIATION?**"

79. Plaintiff asked Defendant COOPER, "What can I do to show you my appreciation?" Defendant COOPER responded, "Have a nice day, sir."

80. Defendant COOPER only responded coldly above because he was aware that Claimant was recording their conversation.

81. Plaintiff informed Mr. Paul Washington of PAL that is DOE FUND supervisor was sexually harassing him. Mr. Paul Washington advised Plaintiff to speak with Defendant Mr. JAMES WASHINGTON, the head supervisor of DOE FUND.

82. Determined to report the sexual harassment, Plaintiff sought out Defendant JAMES WASHINGTON that same day, only to be informed that Defendant JAMES WASHINGTON was in meetings and unavailable.

83. Defendant COOPER violated Plaintiff, leaving Plaintiff distraught, demoralized, and profoundly stress.

84. That same day, Plaintiff went to his wife's home to prepare a complaint against Defendant COOPER. Overcome by deep humiliation and a sense of helplessness, Plaintiff wept as he wrote.

85. With his manhood violated, Plaintiff's embarrassment and trauma prevented him from sharing what Defendant COOPER had done to him.

86. Plaintiff knew that Defendant COOPER targeted him not only because he was bigger, but because Plaintiff was an easy target that would not put up a fight because Plaintiff needed to complete Defendant DOE FUND's program, he needed employment, and could not violate his parole.

87. Plaintiff feared returning to the program, but had to because he could not risk violating his parole.

88. With night curfew approaching, Plaintiff called the Gates facility and his parole officer to inform them that he would be late because Defendant DOE FUND had a strict curfew.

89. Once arrived at the Gates facility, Plaintiff handed the DOE FUND security his complaint regarding the sexual assault. Plaintiff requested for security to place it in Defendant JAMES WASHINGTON's mailbox.

90. On or around the morning of July 22, 2016, the following day, Defendant JAMES WASHINGTON met with Plaintiff regarding his complaint of sexual harassment.

91. Defendant JAMES WASHINGTON informed Plaintiff that his complaint had been sent to Human Resources and he was awaiting a response from their department. Defendant JAMES WASHINGTON assured Plaintiff that COOPER would not return to the Gates Ave facility until the matter was resolved.

92. Defendant JAMES WASHINGTON scheduled a conference meeting with Plaintiff, Defendant COOPER, Human Resource and himself for July 25, 2016 at 2pm.

93. On or around July 23, 2016, Plaintiff arrived for his last night shift before starting his new schedule. Defendant WIGGINS, a DOE FUND Director, was supervising the route that night and informed Plaintiff he had no information regarding Plaintiff's new schedule. Defendant WIGGINS instructed Plaintiff to speak to him the following day with his case manager.

94. The following day, Mr. Porter and Defendant WIGGINS met with Plaintiff and told him that he would have to work weekends and that they would have a set schedule for him by the end of the day.

95. Defendants failed to give Plaintiff his new schedule.

96. Previously, Mr. Porter and Defendant JAMES WASHINGTON granted Plaintiff weekends off to see his children.

97. On or around July 25, 2016, while Plaintiff was waiting for his meeting with Human Resources meeting Defendant COOPER confronted Plaintiff in front of the building, and said, **"WHAT YOU SAY, THIS MOTHER FUCKER HERE?"**

98. Defendant COOPER said the above while extremely close to Plaintiff's face and in attempt to intimidate Plaintiff.

99.  Plaintiff asked Defendant COOPER to please back away, as the workers around attempted to calm Defendant COOPER.

100. Plaintiff was alarmed and frightened by Defendant COOPER's aggressive behavior.

101. One of the workers advised Plaintiff, "**YOU DON'T WANT NO PROBLEMS WITH TERRY. YOU WOULD RATHER HAVE PROBLEMS WITH MR. JAMES WASHINGTON BEFORE YOU HAVE A PROBLEM WITH TERRY**."

102. Upon hearing this, Plaintiff feared that Defendant COOPER would retaliate against him and have him thrown out of the program.

103. Later that day, Plaintiff met with Defendant JAMES WASHINGTON, Mrs. Eunice Gilmore (DOE FUND's Associate Director of Human Resources) and Elizabeth Hanson (DOE FUND's Chief Compliance Officer).

104. Defendant DOE FUND staffed asked Plaintiff to describe how the sexual harassment by Defendant COOPER occurred and Plaintiff relayed the in detail the events of the day before.

105.  For several days, DOE FUND did not issue Plaintiff his new schedule or any resolution from management concerning Defendant COOPER's sexual harassment.

106. On or around July 28, 2016, in a meeting about his schedule, Defendant JAMES WASHINGTON told Plaintiff that he could not have a full weekend or an "overnight" visit with his family, only a "late night" visit because Plaintiff was too new to the program.

107. During this meeting, Mr. Matthews entered the office, despite Defendant JAMES WASHINGTON's objections Mr. Matthews indicated that he could help Plaintiff and Mr. Matthews lead Plaintiff out of the office.

108. As the two left, Defendant JAMES WASHINGTON told Plaintiff, "**REMEMBER YOU CAN HAVE A LATE NIGHT NOT AN OVERNIGHT**."

109.  Mr. Matthews said "I told you I got you…let's go" and lead Plaintiff to the office of Mr. Ronald Holly.

110. Furthermore, Mr. Matthews told Plaintiff that his parole officer already gave Plaintiff permission for overnight visits with his family.

111. As such, Plaintiff went to Mr. Ronald Holly's office to receive a new schedule. Holly said "**I DON'T KNOW WHO FUCKED UP, BUT YOUR SCHEDULE BEEN IN THE COMPUTER. YOU DON'T EVEN HAVE TO COME IN TO WORK ON SATURDAY BECAUSE IT IS IN THE COMPUTER THAT YOU HAVE THOSE DAYS OFF**."

112. Holly showed Plaintiff on the computer his scheduled days off and apologized for the inconvenience. Holly said "**IT WAS NOT YOUR FAULT, SOMEONE WASN'T CROSSING THEIR T'S AND DOTTING THEIR I'S. JUST MAKE SURE YOU'RE HERE TO WORK ON MONDAY**."

113. On or around July 29, 2016, during a night out with Plaintiff's family, he called the facility for a second confirmation that he had a late night status. Defendant DOE FUND's employee Clifford confirmed that Plaintiff was approved to stay out late.

114. Plaintiff returned to the facility at his scheduled time, however, as he headed to his room, the head guard told Plaintiff he was not allowed back in his room because he was late.

115. The above statements and conduct confirmed for Plaintiff, that Defendant DOE FUND and its' supervisors were setting Plaintiff up because of his recent complaint about Defendant COOPER.

116. At all material times, Defendants continually provided Plaintiff with conflicting terms, failed to provide him with a set schedule, and failed to provide confirmation about his privileges.

117. Defendant DOE FUND retaliated against Plaintiff for reporting Defendant COOPER's aggressive sexual advances.

118. On or around July, 30, 2016, Mr. Bell, Defendant DOE FUND's Acting Dispatcher stopped Plaintiff as he was leaving to visit his family. Bell asked Plaintiff, "where are you going? You have to work."

119. Plaintiff informed Bell that he was approved to have weekends off.

120. It was then that Plaintiff first discovered that Defendant DOE FUND wrote him up for a "No Call, No Show" on July 25, 2016, despite the fact that Defendant JAMES WASHINGTON told Plaintiff he would be put on the "in house" list and be excused for the day. Additionally, DOE FUND reported Plaintiff as a "No Call, No Show" on July 28, 2016, when Porter and Mr. Timothy Matthews instructed Plaintiff to follow his old work schedule.

121. Neither "No Call, No Show" should have occurred because Plaintiff was following orders of his supervisors.

122. Because of the above retaliatory acts of Defendant DOE FUND, Plaintiff knew then that a DOE FUND employee or supervisor was setting him up for failure and termination from the program, and additional violations of his parole terms.

123. Plaintiff feared that he would lose his employment, be removed from the program, or be punished by his parole officer despite his attempts to follow proper procedure and follow the schedule that Defendant DOE FUND communicated to him.

124. As Plaintiff's parole required he complete Defendant DOE FUND's program, Plaintiff is still a resident at Defendant DOE FUND but his life is there is very different.

125. After Plaintiff reported to Defendant DOE FUND that supervisor COOPER sexually harassed him, Defendants subjected Plaintiff to numerous forms of retaliation.

14

126. Defendant DOE FUND and Defendant WIGGINS retaliated against Plaintiff for his complaints by treating him less favorably to other Defendant DOE FUND residents and employees.

127. Defendant DOE FUND and Defendant WIGGINS retaliated against Plaintiff by withdrawing employment opportunities to Plaintiff and discouraging Plaintiff from taking fulltime employment outside of the program.

128. Defendant DOE FUND retaliated against Plaintiff by refusing other housing opportunities to Plaintiff, that were typically offered to others.

129. Additionally, Defendant DOE FUND's supervisors purposely wake Plaintiff earlier in the morning on days they know he works a night shift. Defendant DOE FUND's supervisors do so by banging loudly on his door or making other noises. The noise is so loud that other residents notice too.

130. Defendant DOE FUND knew that Defendant COOPER made unwanted sexual advances and comments to employees in the past and did not remedy the situation.

131. Defendant DOE FUND retaliated against Plaintiff for reporting Defendant COOPER's aggressive sexual advances.

132. Defendant DOE FUND took no disciplinary actions whatsoever against Defendant COOPER for sexually harassing Plaintiff.

133. Defendant DOE FUND forced Plaintiff to continue working with his harasser even after he complained. This made Plaintiff extremely uncomfortable and scared that he would continue the harassment.

134. Defendant DOE FUND failed to take any action to remedy the ongoing pattern and practice of sexual harassment and retaliation.

135.  Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of his race, sex/gender and status of being previously convicted, and because he complained or opposed the unlawful conduct of Defendants related to the above protected classes.

136. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

137. Due to Defendant DOE FUND's discriminatory and retaliatory actions, Plaintiff is depressed, irritable, unable to sleep and focus.

138. Plaintiff has suffered emotional distress due to the unlawful harassment and discrimination he suffered.

139. As Defendant DOE FUND's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

140. The above are just some of the examples of unlawful discrimination and retaliation to which Defendants subjected Plaintiff on an ongoing continuous basis.

141. Plaintiff demands to be reinstated to his previous position.

### AS A FIRST CAUSE OF ACTION: DISCRIMINATION UNDER TITLE VII [NOT AGAINST INDIVIDUAL DEFENDANTS]

142. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

143. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin;

144. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race.

## AS A SECOND CAUSE OF ACTION: RETALIATION
## UNDER TITLE VII
## [NOT AGAINST INDIVIDUAL DEFENDANTS]

145. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

146. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has   opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

147. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of his opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION: DISCRIMINATION
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

148. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

149. New York State Executive Law § 296 provides that, 1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

150. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race and sex/gender, together with sexual harassment, causing a hostile work environment and wrongful termination.

151. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION: RETALIATION
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

152. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

153. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

154. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

18

155. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FIFTH CAUSE OF ACTION: AID AND ABET
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

156. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

157. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

158. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

159. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A SIXTH CAUSE OF ACTION: DISCRIMINATION
## UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

160. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

161. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived

age, race, creed, color, national origin, gender, disability, marital status, sexual

orientation or alienate or citizenship status of any person, to refuse to hire or employ

or to bar or to discharge from employment such person or to discriminate against such

person in compensation or in terms, conditions or privileges of employment.

162. Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working

conditions, and otherwise discriminating against the Plaintiff because of because of his race,

sex/gender, and his status of being previously convicted.

163. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

New York City Administrative Code Title 8.


### AS A SEVENTH CAUSE OF ACTION: RETALIATION
### UNDER NEW YORK CITY LAW
### [AGAINST ALL DEFENDANTS]

164. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this complaint.

165. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate

against any person because such person has opposed any practices forbidden under this chapter. . ."

166.  Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Tide 8, §8-107(1)(e) by discriminating against the Plaintiff because of

Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.


### AS AN EIGHTH CAUSE OF ACTION: AID AND ABET
### UNDER NEW YORK CITY LAW
### [AGAINST ALL DEFENDANTS]

167. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

168. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

169. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.


**AS A NINTH CAUSE OF ACTION: INTERFERENCE WITH PROTECTED RIGHTS
UNDER NEW YORK CITY LAW
[AGAINST ALL DEFENDANTS]**

170. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

171. New York City Administrative Code Title 8-107(19) Interference with protected rights.

172. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

173. Defendants violated the section cited herein as set forth.


**AS A TENTH OF CAUSE OF ACTION: SUPERVISORY LIABILITY
UNDER NEW YORK CITY LAW
[AGAINST ALL DEFENDANTS]**

174. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

175. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent

or independent contractor provides:

    A. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    B. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        i. The employee or agent exercised managerial or supervisory responsibility; or

        ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's  discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        iii. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

176. Defendants violated the above section as set forth herein.


### AS AN ELEVENTH OF CAUSE OF ACTION: ASSAULT AND BATTERY
### [AGAINST ALL COOPER INDIVIDUALLY]

177.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

178.  That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the

intent, carelessness and recklessness of Defendants, their agents, servants and/or employees,

suddenly and without provocation did physically assault and batter Plaintiff herein.

### AS A TWELFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF
### EMOTIONAL DISTRESS
### [AGAINST ALL DEFENDANTS]


179. Plaintiff repeats and realleges each and every allegation made in the complaint as if they were

set forth herein fully at length.

180. Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

181. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

182. Defendants caused Plaintiff to fear for Plaintiff's own safety.

183. Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

184. As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A THIRTEENTH CAUSE OF ACTION: GENDER MOTIOVATED VIOLENCE PROTECTION ACT
### [AGAINST ALL DEFENDANTS]

185. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

186. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

187. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual

who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

188. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

189. Defendant's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

190. As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**AS A FOURTEENTH CAUSE OF ACTION: DISCRIMINATION AND RETALIATION
UNDER FEDERAL LAW
42 U.S.C. Section 1981
[AGAINST ALL DEFENDANTS]**

191. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

192. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

193. 42 USC Section 1981 states in relevant part as follows:

i.(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

194. Plaintiff was discriminated against by Defendants because he is an African American man as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

195. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for opposition to Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including compensatory, emotional distress, statutory, punitive damages, attorneys fees and costs in an amount to be determined at the time of trial and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful conduct.

Dated:   New York, New York
         June 14, 2017

Respectfully submitted,

DEREK T. SMITH LAW GROUP. P.C.
*Attorneys for Plaintiff*

_____/s/_____
By: Derek T. Smith
30 Broad Street, 35th Floor
New York, NY 10004
(212)-587-0760